# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CATLIN SYNDICATE LIMITED** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:08CV97-HSO-JMR** |
| | § | |
| **IMPERIAL PALACE OF** | § | |
| **MISSISSIPPI, INC. and IMPERIAL** | § | |
| **PALACE OF MISSISSIPPI, LLC** | § | **DEFENDANTS** |
| | § | |
| | § | |
| **IMPERIAL PALACE OF** | § | |
| **MISSISSIPPI, INC. and IMPERIAL** | § | |
| **PALACE OF MISSISSIPPI, LLC** | § | **COUNTER-CLAIMANTS** |
| | § | |
| **v.** | § | |
| | § | |
| **CATLIN SYNDICATE LIMITED** | § | **COUNTER-DEFENDANT** |

## ORDER AND REASONS GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE, DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT are the Motions for Partial Summary Judgment of

Defendants/Counter-Claimants Imperial Palace of Mississippi, Inc., and Imperial

Palace of Mississippi, LLC [collectively, "Defendants" or "Imperial Palace"], filed on

August 3, 2008 [24-1], and of Plaintiff/Counter-Defendant Catlin Syndicate Limited

["Plaintiff" or "Catlin"] filed on August 11, 2008 [31-1], and Catlin's Motion to Strike

[37-1] filed on August 18, 2008.  All three Motions have now been fully briefed.

Both Motions for Partial Summary Judgment raise the issue of whether

Catlin properly calculated the business interruption insurance losses Imperial

Palace allegedly suffered as the result of Hurricane Katrina.  *See* Defs.' Mot. for

Summ. J., at p. 1; Pl.'s Mot. for Summ. J., at p. 1 (*citing* Compl., at Count I).

Catlin's Motion to Strike [37-1] asks the Court to strike the Affidavit of Dr. William

R. Feldhaus, which was attached as Exhibit "K" to Imperial Palace's Motion for

Partial Summary Judgment [24-1].  After careful consideration of the parties'

submissions, the record, and the relevant legal authorities, and for the reasons

discussed below, the Court finds that Catlin's Motion to Strike should be granted in

part and denied in part, Catlin's Motion for Partial Summary Judgment should be

granted in part and denied in part, and Imperial Palace's Motion for Partial

Summary Judgment should be denied.

## I.  FACTS AND PROCEDURAL HISTORY

Imperial Palace obtained a primary layer of first-party property insurance for

the period March 1, 2005, through March 1, 2006, with limits of $25 million, excess

of deductibles, from Industrial Risk Insurers, and three excess layers of first-party

property insurance from Catlin and other insurers in the London insurance market.

*See* Pl.'s Mot. for Summ. J., at p. 1; Defs.' Mot. for Summ. J., at pp. 4-5; *see also*

Property Insurance Policy No. 31-3-70683, attached as Ex. "1" to Pl.'s Mot. for

Summ. J.; Policy No. BA051063, attached as Ex. "2" to Pl.'s Mot. for Summ. J.;

Policy No. BA051064, attached as Ex. "3" to Pl.'s Mot. for Summ. J.; and Policy No.

BA051183, attached as Ex. "4" to Pl.'s Mot. for Summ. J.  The First Excess Policy

provided $25 million limits in excess of deductibles and the $25 million in Primary

Policy limits.  *See* Compl., at pp. 3-4.  The Second Excess Policy provided $70

million limits in excess of deductibles and the underlying $50 million in Primary and First Excess Policy limits. *See id.* at p. 4. The Third Excess Policy provided $50 million limits in excess of deductibles and the underlying $120 million in Primary, First Excess, and Second Excess Policy limits. *See id.*

On August 29, 2005, Imperial Palace's casino gambling facility in Biloxi, Mississippi, sustained damage during Hurricane Katrina and, consequently, was closed for business for about four months thereafter. *See* Compl., at p. 6; Pl.'s Mot. for Summ. J., at p. 2; Def.'s Mot. for Summ. J., at p. 4. Imperial Palace provided notice of a potential claim to its insurers under the Primary and all three Excess Policies. *See* Compl., at p. 6. Imperial Palace tendered a claim to Catlin and its other insurers for over $79 million in damages for business interruption coverage under the policies. *See* Pl.'s Mot. for Summ. J., at p. 2; Def.'s Mot. for Summ. J., at p. 5. The insurers satisfied all claims under the Primary and First Excess Policies by paying the full limits of both policies. However, they denied partial coverage under the Second Excess Policy and any coverage under the Third Excess Policy.

The Second and Third Excess Policy Underwriters determined that all covered elements of Imperial Palace's Hurricane Katrina claims totaled $65,049,538.00, which included $58,549,144.00 for property damage to buildings and business personal property, and $6,500,394.00 for the business interruption claim. *See* Compl., at pp. 3-5, 7; Pl.'s Mot. for Summ. J., at p. 2; Def.'s Mot. for Summ. J., at p. 5. After calculating and applying an $8,403,220.00 deductible, and

subtracting the $50,000,000.00 limits already paid under the Primary and First

Excess Policies, the Second Excess Policy Underwriters determined that the balance

due for the remainder of all of Imperial Palace's Hurricane Katrina claims was

$6,646,318.00, which was tendered to Imperial Palace. *See* Compl., at p. 7.

Imperial Palace disagrees with the insurers' determination that its claims

totaled $65,049,538.00, contending that the correctly calculated value is

$164,974,665.00, which includes $85,012,906.00 for physical damage to buildings

and business personal property, and $79,961,763.00 for time element losses. *See id.*

The largest discrepancy between the two totals pertains to the business

interruption losses suffered by Imperial Palace, which are estimated as

$6,500,394.00 by the insurers and $79,961,763.00 by a public adjuster hired by

Imperial Palace. *See id.* Catlin and Imperial Palace disagree over the appropriate

method for calculating these business interruption losses. This dispute is the

subject of the present Motions for Partial Summary Judgment.

Catlin filed its Complaint [1-1] on March 17, 2008, seeking declaratory relief

pursuant to Federal Rule of Civil Procedure 57. Catlin requests a declaratory

judgment finding that the Underwriters subscribing the Second Excess Policy,

including Catlin, correctly paid their portion of the limits, and that the

Underwriters subscribing the Third Excess Policy, including Catlin, correctly

assessed their obligations regarding coverage. *See* Compl., at pp. 9-10. Catlin also

asserts that the Second Excess Policy and Third Excess Policy each incorporate an

appraisal provision which provides that, where the parties fail to agree on the amount of loss, any party may make written demand for appraisal of that amount. *See id.* at pp. 8-10. Catlin asks that the Court declare any coverage issue or matter of law necessary for the appraisal to resolve the parties' differences as to the amount of loss, including, where required, any supervision or enforcement of appraisal procedures. *See id.* at p. 10.

In its Amended Answer [55-1],[1] Imperial Palace asserts a Counterclaim against Catlin and John Does 1-1000, which are persons or entities allegedly liable under the excess insurance policies issued to Imperial Palace. *See* Am. Answer, at pp. 9-24. Imperial Palace requests declaratory relief, alleging that the Underwriters have waived their right to demand appraisal, that the appraisal process is premature, and that the Underwriters subscribing to the Second and Third Excess Policies have failed to properly pay the applicable policy limits. *See id.* at pp. 15-16. Imperial Palace advances claims for breach of contract, bad faith and tortious breach of contract, grossly negligent, malicious and reckless claims handling, and negligence. *See id.* at pp. 16-22.

Catlin and Imperial Palace both seek partial summary judgment on the question of whether Catlin properly calculated the business interruption insurance losses. *See* Defs.' Mot. for Summ. J., at p. 1; Pl.'s Mot. for Summ. J., at p. 1 (*citing*

---

[1] Imperial Palace filed its original Answer [9-1] with Counterclaim on April 8, 2008, and filed a Motion for Leave to File an Amended Answer and Counterclaim [23-1], seeking to further describe the fictitious parties described in the original Counterclaim. *See* Defs.' Mot. for Leave to Amend, at p. 1. The Motion was granted by Chief Magistrate Judge John M. Roper by text order on October 31, 2008. Imperial Palace filed its Amended Answer [55-1] on November 20, 2008.

Compl., at Count I). In support of its Motion for Partial Summary Judgment, Imperial Palace has submitted the Affidavit of William R. Feldhaus, which is the subject of Catlin's Motion to Strike.

## II. <u>DISCUSSION</u>

A.      <u>Catlin's Motion to Strike</u>

When an affidavit submitted in support of or opposition to summary judgment does not comply with Federal Rule of Civil Procedure 56(e), it is subject to a motion to strike. *See Auto Drive-Away Co. of Hialeah, Inc. v. I.C.C.*, 360 F.2d 446, 448-49 (5th Cir. 1966). Such affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

Catlin contends that the Affidavit of Dr. William R. Feldhaus "impermissibly attempts to usurp the function of the Court to draw legal conclusions, and sets forth conclusory, inadmissible and insufficiently supported assertions of fact." Mot. to Strike, at p. 1. Catlin maintains that "Imperial Palace failed to disclose the identity of this putative expert, or the materials he relied upon, prior to filing its Motion, despite a request for the production of documents seeking this very information." *Id.* (*citing* Catlin's Request for Production of Documents dated May 28, 2008, attached as Ex. "1" to Mot. to Strike). Imperial Palace responds that the testimony in the Affidavit is relevant, highly reliable, and within the scope of Dr. Feldhaus' expertise, and that it will assist the trier of fact. *See* Resp. to Mot. to Strike, at pp.

-6-

3-4.  Imperial Palace also argues that Catlin has no legitimate objection to the

timeliness of the Affidavit, and that it did not fall within the scope of any of Catlin's

discovery requests.  *See id.* at pp. 18-21.

With respect to the timeliness of the Feldhaus Affidavit and the alleged

failure to disclose it, the record reflects that Imperial Palace's deadline to designate

experts is not until May 1, 2009.  The Court is further of the opinion that the

Affidavit was not responsive to the discovery requests cited by Catlin.

As discussed in more detail below, the Court is persuaded that the business

interruption provision of the insurance contract at issue is unambiguous, and that

the opinions contained in Dr. Feldhaus' Affidavit consist of impermissible legal

conclusions.  *See* Aff. of Dr. William R. Feldhaus, at pp. 4-6, attached as Ex. "K" to

Defs.' Mot. for Partial Summ. J.  Dr. Feldhaus' legal conclusions are not competent

summary judgment evidence and should be excluded.  *See Crosby Memorial Hosp. v.*

*Abdallah*, 48 F. App'x 102, 2002 WL 31016466, *14 (5th Cir. 2002).  To the extent

that Catlin's Motion seeks to strike these impermissible legal conclusions, it will be

granted.  The Motion to Strike will be denied as to the remaining portions of the

Affidavit.  *See* Fed. R. Civ. P. 56(e).  Specifically, opinions 8(a) through (d)

appearing on pages 4 through 6 of Dr. Feldhaus' Affidavit will be stricken.  *See*

*Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (5th Cir. 1992) (holding that a

court should not strike an entire affidavit when portions are inadmissible); *Galindo*

*v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (stating that

"unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment")(internal quotations omitted).  Even if the Court considered these portions of Dr. Feldhaus' Affidavit, however, his conclusions would not alter its rulings on the Motions for Partial Summary Judgment, as detailed herein.  Catlin's Motion to Strike will therefore be granted in part and denied in part.

B.      Motions for Partial Summary Judgment

      1.      Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See*

*id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).

Where "the summary judgment evidence establishes that one of the essential

elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all

other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v.*

*Ehrman,* 954 F.2d 1125, 1138 (5th Cir. 1987)).

　　To rebut a properly supported motion for summary judgment, the opposing

party must present significant probative evidence, since "there is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004)

(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  If the evidence is

merely colorable, or is not significantly probative, summary judgment is

appropriate.  *See Anderson,* 477 U.S. at 249.  The nonmovant may not rely on mere

denials of material facts, nor on unsworn allegations in the pleadings or arguments

and assertions in briefs or legal memoranda.  *See Gaddis v. Smith & Nephew, Inc.,*

534 F. Supp. 2d 697, 699 (S.D. Miss. 2008).

　　2.　　Motions for Partial Summary Judgment

　　It is undisputed that the insurance policies in question provide time element

coverage.  *See* Property Insurance Policy No. 31-3-70683, attached as Ex. "1" to Pl.'s

Mot. for Summ. J.; Policy No. BA051063, attached as Ex. "2" to Pl.'s Mot. for Summ.

J.; Policy No. BA051064, attached as Ex. "3" to Pl.'s Mot. for Summ. J.; and Policy

No. BA051183, attached as Ex. "4" to Pl.'s Mot. for Summ. J.  The crux of this

dispute is whether Catlin properly calculated the business interruption losses

Imperial Palace suffered. *See* Defs.' Mot. for Summ. J., at p. 1; Pl.'s Mot. for Summ.

J., at p. 1 (*citing* Compl., at Count I). The policy provision in question reads as

follows:

> **Experience of the Business** – In determining the amount of the Time
> Element loss as insured against by this policy, due consideration shall be
> given to experience of the business before the loss and the probable
> experience thereafter had no loss occurred.

*See* Property Insurance Policy No. 31-3-70683, at p. 34, attached as Ex. "1" to Pl.'s
Mot. for Summ. J.

Catlin contends that Imperial Palace is limited to business interruption

recovery based on net profits Imperial Palace would probably have earned in late

2005 if Hurricane Katrina had not struck the Mississippi Gulf Coast and damaged

its facilities. *See* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., at pp. 1-2.

Imperial Palace counters that "the best measure of what Imperial Palace would

have earned had it not been damaged is the amount Imperial Palace actually did

earn once it reopened after Katrina." Defs.' Mem. in Supp. of Mot. for Partial

Summ. J., at p. 2.

Imperial Palace places great significance on the phrase "had no loss

occurred," contained in the Primacy Policy. *See* Defs.' Mem. in Supp. of Mot. for

Partial Summ. J., at pp. 5-10; Property Insurance Policy No. 31-3-70683, at p. 34,

attached as Ex. "1" to Pl.'s Mot. for Partial Summ. J. Imperial Palace maintains

that this phrase refers to what it would have earned had it been able to remain

open immediately after Hurricane Katrina, while all of its competitors were closed

due to damage from the storm. *See* Defs.' Mem. in Supp. of Mot. for Partial Summ. J., at p. 7. Because Imperial Palace was able to reopen before its competitors, it asserts that its business interruption losses for the time period during which it was closed should reflect its post-Katrina profits, which it earned at a time when it was the only casino open for business in the area. *See id.* at p. 2. Catlin rejects this method of calculation and contends that the policy provision means the probable experience of Imperial Palace had Hurricane Katrina not occurred. *See* Pl.'s Mem. in Supp. of Opp'n to Defs.' Mot. for Partial Summ. J., at p. 14.

"Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *United States Fidelity and Guar. Co. of Mississippi v. Martin*, No. 2007-CA-00193-SCT, ---So. 2d---, 2008 WL 4740031, *4 (Miss. Oct. 30, 2008) (internal citations omitted). As the Mississippi Supreme Court has recently noted, "ambiguities do not exist simply because two parties disagree over the interpretation of a policy." *Id.* "Contract interpretation, including the question of whether a contract is ambiguous, is a question of law...." *Millennium Petrochems., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004). After a careful review of the record, the Court is of the opinion that, when read together as a whole, the relevant portions of the policy in question are not ambiguous.

"When a contract is unambiguous, determining its meaning is a question of law for the court to decide, and the contract must be enforced as written." *Mississippi Transp. Commission v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077,

1087 (Miss. 2000). "Although ambiguities in an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002); *see also Martin*, 2008 WL 4740031, at *4.

As noted above, Imperial Palace contends that the phrase "had no loss occurred" in the Primacy Policy refers to what it would have earned had it been able to remain open immediately after Hurricane Katrina, while all of its competitors were closed due to damage from the storm. *See* Defs.' Mem. in Supp. of Mot. for Partial Summ. J., at p. 7. Imperial Palace posits that, because it was able to reopen before its competitors, its business interruption losses for the time period during which it was closed should reflect its actual post-Katrina profits. *See id.* at p. 2. Catlin disagrees. *See* Pl.'s Mem. in Supp. of Opp'n to Defs.' Mot. for Partial Summ. J., at p. 14.

In support of its contentions, Imperial Palace places great reliance on an Order on Motions for Summary Judgment dated June 13, 1994, entered in *Stamen v. Cigna Property and Casualty Ins. Co.*, Case No. 93-1005-CIV-Davis, in the United States District Court for the Southern District of Florida, Miami Division. *See* Defs.' Mot. for Partial Summ. J., at pp. 7-8. The *Stamen* court held that the policy language in question in that case, which was similar to the time element loss provision in the Primary Policy here, dictated that lost profits should be measured, at least in part, by the increased profits that would have resulted had the

businesses been open immediately after the hurricane. *See Stamen v. Cigna Property and Casualty Ins. Co.*, Case No. 93-1005-CIV-Davis, Order on Motions for Summary Judgment dated June 13, 1994, at pp. 4-6, attached as Ex. "E" to Defs.' Mot. for Partial Summ. J.

In response, Catlin cites authority from the Fifth Circuit, the Fourth Circuit, the Southern District of Florida, and the Eastern District of Louisiana, all dealing with similar policy provisions, which are contrary to the holding in *Stamen*. *See* Pl.'s Mem. in Supp. of Opp'n to Defs.' Mot. for Partial Summ. J., at pp. 5-6 (*citing Finger Furniture Co., Inc. v. Commonwealth Ins. Co.,* 404 F.3d 312 (5th Cir. 2005); *Prudential LMI Commercial Ins. Co. v. Colleton Enters., Inc.*, 976 F.2d 727, 1992 WL 252507, \*4 (4th Cir. Oct. 5, 1992); *Levitz Furniture Corp. v. Houston Cas. Co.*, 1997 WL 218256, \*3 (E.D. La. Apr. 28, 1997); *Am. Auto. Ins. Co. v. Fisherman's Paradise Boats, Inc.*, 1994 WL 1720238, \*4 (S.D. Fla. Oct. 3, 1994)). The Court notes that, with the exception of the Fourth Circuit case, all of the foregoing authorities cited by Catlin are more recent than the *Stamen* decision relied upon by Imperial Palace. After careful review of all of the foregoing, the Court is persuaded that the weight of authority supports Catlin's position.

In *Finger Furniture,* the business-interruption provision read as follows:

> In determining the amount of gross earnings covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of the *damage or destruction* and to the probable experience thereafter had no *loss* occurred.

*Finger Furniture*, 404 F.3d at 314 (emphasis added).

The business-interruption policy in *Finger Furniture* uses two different terms, "damage or destruction" and "loss," rather than the term "loss" twice, as utilized in the Primary Policy here. Imperial Palace places great significance on this difference. Black's Law Dictionary uses the terms "damage" and "loss" interchangeably. It defines "damage" as "loss . . . to property," and in the context of insurance, it defines "loss" as "[t]he amount of financial detriment caused by . . . an insured property's damage, for which the insurer becomes liable." BLACK'S LAW DICTIONARY 416, 963 (8th ed. 2004). Reading the policy in this case as a whole, the Court is of the opinion that the difference in terminology between the policy in this case and the one in *Finger Furniture* is, under these facts, immaterial, does not alter the meaning of the policy, and does not make the policy ambiguous. In short, the Court is of the opinion that, based on the circumstances of this case, the variance in the policy language is a distinction without a difference.

As in *Finger Furniture,* the nearly identical business loss provision in this case "says nothing about taking into account *actual* post-damage sales to determine what the insured would have experienced had the storm not occurred." *Finger Furniture,* 404 F.3d at 315 (emphasis added).

> The policy language indicates that a business-interruption loss will be based on historical sales figures . . . . Historical sales figures reflect a business's experience before the date of the damage or destruction and predict a company's probable experience had the loss not occurred. *The strongest and most reliable evidence of what a business would have done had the catastrophe not occurred is what it is doing in the period just before the interruption.*

*Id.* at 314 (emphasis added).

The Court is persuaded that the same logic holds true in the present case. Pursuant to the unambiguous terms of the policy provisions at issue here, the Court is of the view that the policy contemplates a calculation based on what Imperial Palace probably would have done had Hurricane Katrina not occurred. Had Hurricane Katrina not occurred, Imperial Palace's competitors would have remained open.

Based on the foregoing, Imperial Palace cannot carry its burden of demonstrating that it is entitled to judgment as a matter of law, such that partial summary judgment in its favor would be inappropriate. Catlin has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law as to the narrow issue of whether or not Imperial Palace's profits upon reopening after Hurricane Katrina should be taken into account to determine what Imperial Palace would have experienced had the storm not occurred. Partial summary judgment in its favor is appropriate as to this issue. *See* FED. R. CIV. P. 56.

To the extent that Catlin seeks partial summary judgment on the issue of whether its actual calculation of the business interruption losses suffered by Imperial Palace was accurate based on Catlin's interpretation of the policy, the Court is of the opinion that Catlin has not met its burden of demonstrating that there is no genuine issue as to any material fact or that it is entitled to judgment as a matter of law on this issue. The present record is insufficient for the Court to conclude, one way or the other, whether the losses were properly calculated based

on Catlin's interpretation of the policy provision. A genuine issue of material fact exists as to whether Catlin gave "due consideration" to the experience of the business before the loss and the probable experience thereafter had Hurricane Katrina not occurred, as required by the policy, in calculating the business interruption loss. Partial summary judgment on this issue is not appropriate at this time. *See id.*

## III. CONCLUSION

For the reasons stated more fully herein, based on the record of this particular case, the Court is of the opinion that Catlin's Motion to Strike should be granted in part and denied in part, that Imperial Palace's Motion for Partial Summary Judgment should be denied, and that Catlin's Motion for Partial Summary Judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Plaintiff/Counter-Defendant Catlin's Motion to Strike [37-1] filed on August 18, 2008, should be and is hereby **GRANTED IN PART AND DENIED IN PART**, and opinions 8(a) through (d) appearing on pages 4 through 6 of the Affidavit of Dr. William R. Feldhaus, which is attached as Exhibit "K" to Defendants' Motion for Partial Summary Judgment [24-1], should be and are hereby **STRICKEN**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendants/Counter-Claimants Imperial Palace of Mississippi, Inc.'s, and Imperial Palace of Mississippi, LLC's, Motion for Partial

Summary Judgment [24-1], filed on August 3, 2008, should be and is hereby **DENIED**.

  **IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Plaintiff/Counter-Defendant Catlin Syndicate Limited's Motion for Partial Summary Judgment [31-1] filed on August 11, 2008, should be and is hereby **GRANTED IN PART**, to the extent that Catlin seeks a partial summary judgment that Imperial Palace's profits upon reopening after Hurricane Katrina should not be taken into account to determine what Imperial Palace would have experienced had the storm not occurred, and **DENIED IN PART**, to the extent Catlin seeks a partial summary judgment on the issue of whether it gave "due consideration" as required by the policy, and thus whether its actual calculation of the business interruption insurance losses Imperial Palace suffered was correct.

  **SO ORDERED AND ADJUDGED**, this the 15th day of December, 2008.

       *s/ Halil Suleyman Ozerden*
       HALIL SULEYMAN OZERDEN
       UNITED STATES DISTRICT JUDGE